UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

RAULDRIS CAMACHO SALINAS,                                      Petitioner,

v.                                                  Civil Action No. 4:25-cv-121-DJH

JASON WOOSLEY, Jailer, Grayson County
Jail et al.,                                                  Respondents.

* * * * *

**<u>MEMORANDUM OPINION AND ORDER</u>**

Petitioner Rauldris Camacho Salinas seeks a writ of habeas corpus pending removal proceedings and challenges her detention by immigration authorities. She contends that her detention violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. (Docket No. 1) The Court granted the parties' joint motion to forgo a show-cause hearing due to a lack of factual dispute (D.N. 9), and the parties have since submitted briefs setting out their respective legal arguments (D.N. 11; D.N. 12). After careful consideration, the Court will grant the petition for the reasons explained below.

**I.**

Salinas "is a native and citizen of Venezuela." (D.N. 1, PageID.4 ¶ 19) She has been present in the United States for more than two years, after fleeing Venezuela "around August 2023." (*Id.*; *see also* D.N. 1-1, PageID.20–23) Salinas was arrested near the border in August 2023, placed in removal proceedings, and released on her own recognizance. (D.N. 1-1, PageID.20, 22) She "has a pending asylum application with the immigration court based on her fear of returning to Venezuela." (D.N. 1, PageID.4 ¶ 19) Salinas "is engaged to a U.S. citizen[] and has no criminal history." (*Id.* ¶ 21) On October 15, 2025, she was arrested by U.S. Immigration and Customs Enforcement (ICE) agents during a "routine check-in through the

1

[Compliance Assistance Reporting Terminal (CART)] system."[1]  (*Id.* ¶ 20)  Salinas is currently detained at Grayson County Jail in Leitchfield, Kentucky.  (*Id.*, PageID.2 ¶ 6)  She seeks a writ of habeas corpus against Jason Woosley, the Grayson County jailer; and Russell Hott, the Chicago Field Office Director for ICE.  (*See generally* D.N. 1)  Additionally, Salinas requests both an order for Respondents to schedule a bond hearing and immediate release pending those proceedings.[2]  (*See* D.N. 1, PageID.18)  Respondents argue that (1) Salinas has not exhausted her administrative remedies; (2) her detention is lawful under 8 U.S.C. § 1225; (3) her detention does not violate due process; and (4) the remedy of release is not appropriate "prior to [an] immigration judge entertaining a bond hearing."[3]  (*See* D.N. 11, PageID.53–69)

## II.

### A.     Exhaustion of Remedies

Because the record indicates that Salinas has not requested a bond hearing, the government argues that "[t]he doctrine of prudential exhaustion supports requiring [her] to exhaust the process for seeking bond from the immigration judge prior to requesting relief from this Court."[4]  (D.N.

---

[1] "[A] CART kiosk is a self-service kiosk . . . located inside [an] ICE [Enforcement and Removal Operations (ERO)] field office[] . . . [which] enable[s] eligible aliens on the non-detained docket with Orders of Supervision (OSUP) or Orders of Recognizance to check in with ERO using the kiosk rather than meeting with an ERO officer in person."  (D.N. 11, PageID.51 n.2 (citation omitted))

[2] Salinas also requests that Respondents be enjoined from moving her outside this district.  (*See* D.N. 1, PageID.18)  As in recent similar cases, the Court will deny this request as moot.  *See Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *8 n.10 (W.D. Ky. Nov. 4, 2025) (citing *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *16 (E.D.N.Y. Oct. 6, 2025)).

[3] Respondents assert that "if this Court concludes it has jurisdiction to order a bond hearing, release before that bond hearing is not within this Court's authority."  (D.N. 11, PageID.48)  Yet Respondents do not otherwise argue that the Court lacks jurisdiction to order a bond hearing.  (*See generally* D.N. 11)  In any event, the Court notes its recent finding of jurisdiction in a similar case.  *See Alonso*, 2025 WL 3083920, at *2.

[4] The United States primarily relies on *Torrealba v. U.S. Department of Homeland Security*, No. 1:25CV01621, 2025 WL 2444114 (S.D. Ohio Aug. 25, 2025), in support of this argument.  (*See*

11, PageID.60)  In response, Salinas contends that exhaustion is "not required and should be excused" because "seeking bond" in immigration court would be "futile."  (D.N. 12, PageID.90) The Court recently waived exhaustion requirements for a similarly situated habeas petitioner in *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *3–4 (W.D. Ky. Nov. 4, 2025). In applying the three-factor test set out in *United States v. California Care Corp.*, 709 F.2d 1241 (9th Cir. 1983), the Court reasoned that (1) the legal question of whether § 1225 or § 1226 applies "does not require agency consideration"; (2) waiver would not "encourage the deliberate bypass of administrative review," since the petitioner had raised a constitutional challenge to his detention and the Board of Immigration Appeals (BIA) has "concluded that immigration judges lack authority to hear bond determinations" in cases such as the petitioner's; and (3) administrative review is unlikely to render judicial review unnecessary because "Respondents have clearly indicated their position that § 1225 authorizes [the petitioner's] detention."[5]  *Alonso*, 2025 WL 3083920, at *3–4.  Unlike the petitioner in *Alonso*, Salinas apparently did not request an initial bond hearing.  (*See generally* D.N. 1; D.N. 12)  Nevertheless, the facts presented here are sufficiently similar that the *Alonso* reasoning applies.  Thus, the Court will waive exhaustion and consider Salinas's habeas petition.  *See Alonso*, 2025 WL 3083920, at *3–4; *Guerra v. Woosley*,

---

D.N. 11, PageID.61–63)  But *Torrealba* is distinguishable because it challenged an expedited removal order.  *See Ballestros v. Noem*, No. 3:25-cv-594-RGJ, 2025 WL 2880831, at *2 (W.D. Ky. Oct. 9, 2025) (citing *Torrealba*, 2025 WL 2444114, at *2).  Expedited removal "is separate and distinct from this matter, as [Salinas] is challenging her statutory reasoning for detention, and how the detention allegedly violates the Due Process Clause."  *Id.*

[5] Under this test, the Court requires exhaustion where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."  *Alonso*, 2025 WL 3083920, at *3 (citing *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025)).

No. 4:25-cv-119-RGJ, 2025 WL 3046187, at *2–3 (W.D. Ky. Oct. 31, 2025) (waiving the exhaustion requirement where no initial bond hearing before an immigration judge was requested).

## B.    Immigration and Nationality Act

Salinas asserts that her detention violates the Immigration and Nationality Act, 8 U.S.C. §§ 1225–1226, because she is "subject to [§] 1226(a)'s discretionary detention scheme." (See D.N. 12, PageID.89)  Respondents maintain that Salinas is "lawfully mandatorily detained" under § 1225(b)(2) as "an applicant for admission pending her removal proceedings before an immigration judge." (D.N. 11, PageID.48)  Respondents' argument as to the applicability of § 1225 over § 1226 is nearly identical to the argument made in *Alonso*, 2025 WL 3083920, at *4– 8.[6]  The Court thus summarizes and incorporates by reference its reasoning and conclusion from that case.

In *Alonso*, the Court relied on the language and context of § 1225 and § 1226 in concluding that the petitioner was an "applicant for admission" under § 1225(a)(1) (as a noncitizen present in the United States who had entered without inspection and authorization by an immigration officer) but was not "seeking admission" under § 1225(b)(2)(A) because he had resided in the United States for more than a decade. *See id.* at *5, *7.  The Court then determined that § 1226(a) applied, entitling the petitioner to a bond hearing because he was a noncitizen "arrested and detained [on a warrant issued by the Attorney General] pending a decision on whether [he was] to be removed

---

[6] Respondents cite several new authorities not raised in *Alonso*.  Some of these additional authorities further expound the statutory scheme at issue. (*See, e.g.*, D.N. 11, PageID.56)  Others support the argument that Salinas is an "applicant for admission." (*See* D.N. 11, PageID.57–58)  But the Court determined in *Alonso* that the petitioner was an "applicant for admission," 2025 WL 3083920, at *5, and the same analysis applies here.  Therefore, the Court need not consider the new authorities regarding Salinas's status as an "applicant for admission" and does not find that any of the additional sources materially alter Respondents' arguments on the Immigration and Nationality Act as a whole.

from the United States." *Id.* at *5 (citing § 1226(a)); *see also id.* at *8.  While the petitioner in *Alonso* had been residing in the United States for more than a decade, *see id.* at *7, and Salinas has been present here for just over two years (D.N. 1, PageID.4 ¶ 19), other district courts have similarly found § 1225 inapplicable where petitioners had resided in the United States for only a handful of years.  *See, e.g.*, *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025) (around three years); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025) (two years); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025) (over a year).  Likewise, Salinas's prior interaction with immigration authorities in August 2023 and subsequent release on her "own recognizance" does not bar such a finding.  *See, e.g.*, *Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, *1, *5 (W.D. Ky. Oct. 3, 2025); *Orellana v. Noem*, No. 4:25-CV-112-RGJ, 2025 WL 3006763, *1, *5 (W.D. Ky. Oct. 27, 2025).  Finally, as in *Alonso*, the warrant authorizing Salinas's arrest was issued under § 1226.  (*See* D.N. 1-1, PageID.23; *see also Alonso*, 2025 WL 3083920, at *8 ("Section 236 of the Act is codified at 8 U.S.C. § 1226.") (citation omitted))

Consistent with *Alonso* and caselaw from across the country addressing the same issue, the Court concludes that Salinas is detained under § 1226(a) rather than § 1225(b)(2) and is thus entitled to a bond hearing.  *See Alonso*, 2025 WL 3083920, at *7; *see also Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sep. 19, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025).

**C.    Due Process**

Salinas also argues that her detention violates due process under the Fifth Amendment since "Respondents have not demonstrated that [she] needs to be detained."  (D.N. 1, PageID.16

¶ 55)  Respondents contest this assertion, arguing that Salinas has been given all the due process that is required for detention under § 1225(b).  (D.N. 11, PageID.64–66)  As explained above, however, Salinas is detained under § 1226, not § 1225.  Therefore, Respondents' arguments on the due process required for § 1225(b) detainees are not relevant.[7]

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."  *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted).  The Court applies the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether civil detention violates due process.  *See Alonso*, 2025 WL 3083920, at *8 (citing *Barrera*, 2025 WL 2690565, at *6).  Under that test, the Court must weigh three factors:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (citing *Mathews*, 424 U.S. at 335).

Here, the three *Mathews* factors support granting Salinas a hearing.  As in other cases recently before the Court, it is "undisputed [Salinas] has a significant private interest in not being detained."  *Barrera*, 2025 WL 2690565, at *6; *see also Alonso*, 2025 WL 3083920, at *8.  And

---

[7] Respondents also assert, without citation to authority, that "the reasoning of [*Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020),] extends to all applicants for admission."  (D.N. 11, PageID.65)  Yet in that case, the Supreme Court explicitly noted that Thuraissigiam invoked the writ "to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this country" rather than simply be "release[d] from unlawful detention."  *See id.* at 106, 119.  Absent further citation or explanation, the Court fails to see how *Thuraissigiam* supports Respondents' position here.

"the risk of erroneously depriving [her] of [her] freedom is high if the [immigration judge] fails to assess [her] risk of flight and dangerousness." *Lopez-Campos*, 2025 WL 2496379, at *9; *see also* 8 C.F.R. §1236.1(c)(8), (d)(1); *Guerra*, 2025 WL 3046187, at *5 ("In fact, [Petitioner] has no criminal history and is engaged to a United States citizen. . . . She is also awaiting the decision of [an] asylum claim."). Finally, a "routine bond hearing" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite*, 2025 WL 2829511, at *15. Salinas's lack of criminal history further diminishes the United States' interest. *See Guerra*, 2025 WL 3046187, at *5 (citing *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025)). The Court thus finds that Salinas's detention without a bond hearing violates due process. *See Alonso*, 2025 WL 3083920, at *8; *Guerra*, 2025 WL 3046187, at *5; *Barrera*, 2025 WL 2690565, at *7; *Lopez-Campos*, 2025 WL 2496379, at *9–10.

**D.     Release as a Remedy**

According to Respondents, Salinas's claim that she is detained under § 1226 and simultaneous request for release amount to "a legal oxymoron." (D.N. 11, PageID.66) Respondents further argue that Salinas's "request denies the very process statutorily mandated by the detention statute she claims is applicable." (*Id.*; *see also id.*, PageID.68 ("When a court concludes that § 1226 is the appropriate detention statute for a habeas petitioner, it is not concluding that release is appropriate, but rather that detention is appropriate under § 1226.")) Salinas contends that Respondents have "fail[ed] to articulate the changed circumstances that would require [her] re-detention." (D.N. 12, PageID.94) Further, Salinas asserts that release does not "overstep judicial authority" where a writ of habeas corpus is sought and does not disturb removal proceedings because "bond hearings are completely separate processes." (*Id.*, PageID.95)

As an initial matter, district courts, including this Court, have previously ordered both immediate release and bond hearings for habeas petitioners detained under § 1226, apparently without challenge from the United States.[8] *See, e.g.*, *Guerra*, 2025 WL 3046187, at *6; *Godinez-Lopez v. Ladwig*, No. 2:25-CV-02962-SHL-ATC, 2025 WL 3047889, at *6 (W.D. Tenn. Oct. 31, 2025) (granting petitioner's "releas[e] from detention pending a bond hearing before an [immigration judge]"). *But see Barrajas v. Noem*, No. 4:25-cv-00322-SHL-HCA, 2025 WL 2717650, at *5 (S.D. Iowa Sep. 23, 2025) (granting bond hearing as injunctive relief and noting tension between immediate release and § 1226(e)). Indeed, "[h]abeas has traditionally provided a means to seek release from unlawful detention." *Thuraissigiam*, 591 U.S. at 103–04; *see also Zadvydas*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

The Court will nevertheless consider the arguments presented by Respondents. They assert that release is "antithetical" to the statutory language of § 1226 and "its statutory purpose for detention." (*See* D.N. 11, PageID.68) Under § 1226, the Attorney General has discretion to release a noncitizen on bond or conditional parole while a removal decision is pending. 8 U.S.C. § 1226(a)(2). But here, Salinas has been denied the opportunity to pursue the process provided under § 1226(a) and its accompanying regulations; she has not received the chance for a bond hearing on the merits. *See Alonso*, 2025 WL 3083920, at *5 (citations omitted); 8 C.F.R. § 1236.1(d)(1). Additionally, apprehension under § 1226(a) involves an initial custody determination by an ICE officer, at which point the noncitizen may be released if the officer is

---

[8] Other district courts vary in the habeas relief provided. *See, e.g.*, *Maldonado de Leon v. Baker*, No. 25-3084-TDC, 2025 WL 2968042, at *29 (D. Md. Oct. 21, 2025) (retroactively affording the process required by § 1226(a) after petitioner was "improperly subjected to mandatory detention pursuant to 8 U.S.C. § 1225(b)"); *Lopez-Campos*, 2025 WL 2496379, at *10 (ordering provision of a bond hearing "in the alternative" to petitioner's immediate release); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2267803, at *15 (S.D.N.Y. Aug. 8, 2025) (ordering immediate release).

satisfied that "such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8); *see also C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *3 (E.D. Cal. Nov. 3, 2025) ("When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. . . . '[and releases the noncitizen if they] would not pose a danger to property or persons[] and . . . [are] likely to appear for any future proceeding.'") (citation omitted). "Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest." *C.A.R.V.*, 2025 WL 3059549, at *3 (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also dos Santos v. Noem*, No. 25-cv-12052, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025). Here, Salinas was released after her August 2023 arrest "on her own recognizance" (D.N. 1-1, PageID.22), which is a form of conditional parole, *Gomes*, 2025 WL 1869299, at *2 (citations omitted). Respondents have not argued that any changed circumstances exist to justify her re-arrest.[9] (*See generally* D.N. 11)

Respondents further contend that release would "usurp" the discretion of the immigration judge and "invade[] the adjudication of the removal proceeding." (D.N. 11, PageID.69) But the Court will order a bond hearing before an immigration judge, who will then decide whether detention is appropriate based on the applicable regulations and a variety of factors identified by the BIA. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006); *see also Maldonado*, 2025 WL 2968042, at *10 ("Ordering a bond hearing will allow the Immigration Court to weigh [petitioner]'s risk of non-appearance and dangerousness."). And such bond proceedings are

---

[9] "It is undisputed that the Government retains significant discretion in revoking conditional parole—it may do so 'at any time.'" *Huamani v. Francis*, No. 25-cv-8110 (LJL), 2025 WL 3079014, at *7 (S.D.N.Y. Nov. 4, 2025) (citing 8 U.S.C. § 1226(b)). "But Due Process still requires that such discretion actually be exercised—i.e., that some determination actually be made." *Id.*

statutorily separate from pending removal proceedings. *See* 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding.").

Finally, a grant of both immediate release and a bond hearing before an immigration judge prior to any re-detention is consistent with decisions in similar cases across the country. *See, e.g.*, *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 U.S. Dist. LEXIS 225957, at *9 (S.D. Cal. Nov. 17, 2025) ("[D]ue process requires Petitioner to be released from custody and receive a bond hearing before an immigration judge before he can be re-detained."); *Ramos v. Rokosky*, No. 25CV15892 (EP), 2025 WL 3063588, at *9 (D.N.J. Nov. 3, 2025) (granting release and requiring a bond hearing if petitioner was later arrested and detained under § 1226); *see also Hyppolite*, 2025 WL 2829511, at *16 (barring re-detention without a bond hearing after having previously granted immediate release). *But see De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, *25 (W.D. Mich. Oct. 31, 2025) ("In light of the statute, the Court concludes that it is more prudent to direct that Petitioner receive an individualized bond determination, and that the immigration judge is in the better position to evaluate whether Petitioner poses a flight risk and a danger to the community.").

Consistent with the caselaw cited above, the Court will order that Salinas be released and shall be provided a bond hearing upon any further arrest and re-detention under § 1226(a). *See Alonso*, 2025 WL 3083920, at *9; *Godinez-Lopez*, 2025 WL 3047889, at *6; *Faizyan*, 2025 U.S. Dist. LEXIS 225957, at *9.

**III.**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Salinas's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**.  The United States is **DIRECTED** to release Salinas from custody and, if she is arrested and re-detained under 8 U.S.C. § 1226(a), provide her with a bond hearing before a neutral Immigration Judge.  The United States **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **November 24, 2025**.

(2)     Salinas's request that Respondents be enjoined from moving her outside this district is **DENIED** as moot.

November 20, 2025

**David J. Hale, Chief Judge**
**United States District Court**

11